Our conclusion is that the plea of lis pendens is well founded and must prevail.

For the reasons assigned, the judgment on the merits herein is annulled, the plea of lis pendens is sustained, and plaintiff's suit is dismissed at his costs.

O'NIELL, C. J., concurs in the decree on the ground that the Court of Appeal had not disposed of the first suit when the second suit was filed, but he is of the opinion that the decisions cited do not sustain the proposition that the plaintiff had a right to appeal from the judgment dismissing the defendant's reconventional demand as of nonsuit.

**KENNEDY SUPPLY CO., Inc., v. ED E. WILLIAMS & SON et al.**

No. 5704.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

Scarborough & Barham, of Ruston, for appellant.

Robert Lane Fuller, of Ruston, for appellee.

HAMITER, Judge.

In the year of 1934, Ed E. Williams and his son, J. W. Williams, acquired an agency for the sale of Plymouth and Dodge automobiles in the City of Ruston, Louisiana, and thereafter they operated that business, together with an automotive service and parts department, as a commercial partnership under the name of Ed E. Williams & Son.

About the month of May, 1935, the partners transferred unto one Ragan Odom the service department and all equipment and parts belonging thereto under an agreement that the latter would be furnished housing facilities in consideration of his servicing of cars of the sales agency. Approximately three months thereafter the father delivered to the son the active management of said agency, but not his interest therein, and commenced to give most of his attention to a filling station owned by him and located seven or eight blocks away.

In September or October of 1936, Odom delivered back to Ed E. Williams & Son the service station and equipment, and worked in the employ of the partnership, on a commission basis, until December 23, 1936. Both the sales agency and the service department were owned and operated by the partnership after the mentioned transfer from Odom.

During 1935 and the following two years plaintiff corporation, which has its domicile in Shreveport, Louisiana, sold various articles of merchandise to Ed E. Williams & Son. These sales were effected through the efforts of M. T. Hall, plaintiff's salesman and representative in the Ruston territory. Payment was made for all of the merchandise, except that sold and delivered between the dates of and including April 10, 1937, and September 4, 1937, for which there is a balance due of $198.12.

It is for the recovery of the named sum that this suit was filed. A solidary judgment is asked against the partnership and its individual members.

Only the father, Ed E. Williams, answered. Preliminary defaults were regularly entered against the partnership, Ed E. Williams & Son, and the remaining partner, J. W. Williams.

Liability is denied by Ed E. Williams, as his answer and the brief of his counsel disclose, for the asserted reason that he instructed plaintiff's salesman to furnish no merchandise to the partnership unless he approved the order; that his approval of the sale of the articles for which recovery is herein sought was not obtained from him; and that his instructions to the salesman are binding on plaintiff herein.

The trial court rendered judgment in favor of plaintiff in accordance with its prayer, and defendant Ed E. Williams appealed.

The record discloses that the only instructions given the salesman, on which the denial of liability is predicated, were in the month of January, 1936. At this time, as is hereinabove observed, the service department was owned and operated by Odom, who installed and used most of the articles purchased by and for the sales agency. In fact, he placed some of the orders. With reference to the instructions in question, Ed E. Williams testified:

"Q. You know Mr. Mabe Hall? A. Yes.

"Q. Also known as M. T. Hall? A. Yes.

"Q. What business relations have you had with him as representative of the plaintiff in this case in reference to the account that they have been carrying on their books as Ed E. Williams & Son, account? A. Well I think it was in January 1936 Mabe brought a check up there for about fifty dollars, I think, and I asked him what it was for, and he said, merchandise that J. W. bought at the Dodge and Plymouth place, and I argued a little and I finally told him, 'Mabe, I am going to pay this bill but don't put anything down there to J. W. unless I o. k. it' ".

For a number of months thereafter and until the delivery of the service department back to the partnership, salesman Hall complied with the demands of the father and obtained the required approval on each order given by J. W. Williams or Ragan Odom, as the case was. Subsequent to that time, however, he secured no such approval for, according to his testimony, J. W. Williams told him that it was no longer necessary to do so. The following questions were propounded to him and answers thereto given:

"Q. How long did you continue getting those orders signed by Mr. Ed Williams? A. Up until the time J. W. bought out Mr. Odom, early part of fall, 1936.

"Q. Why did you stop getting the signatures? A. J. W. said he and Mr. Ed had bought out Mr. Odom, taken over the shop. Prior to that time they had just bought a little stuff for a car now and then that they bought and wanted to repair. The only parts they bought would be a piece of glass or a floor mat or something to put in used cars that they had swapped for.

\*\* \*\* \*\*

"Q. Did Mr. J. W. Williams ever state to you that he and the old man, meaning Mr. Ed E. Williams, were operating the shop and garage together? A. Yes, said operated under the same name, only difference I would not have to go get the orders o. k.'d like I did when they were buying the little things to use as replacements."

J. W. Williams denies having made the aforementioned statement attributed to him by Hall.

In the month of November, 1936, which was after Odom's withdrawal as owner of the service department and prior to the incurring of the obligation sued on, three separate shipments of merchandise were delivered to and paid for by the partnership of Ed E. Williams & Son. All of these were ordered by J. W. Williams, and none carried the approval of the father, Ed E. Williams. The payments of these unapproved sales serves to corroborate Hall's testimony regarding the statement assertedly made by J. W. Williams that the validating of orders by his father was no longer necessary.

The record further discloses that subsequent to the partnership's reacquisition of the service department, various advertisements in the Ruston newspapers informed of the operations of Ed E. Williams & Son's sales agency and service department. Also carrying that partnership's name were a bank account, road advertisements, telephone directory and letterheads.

Assuming for the purpose of this discussion, and for that purpose only, that the law of this state permits a member of a commercial partnership to restrict his individual liability for merchandise purchased and debts incurred by another partner for the benefit of the entity, we believe

that the instructions given to Hall were ineffective in so far as the account in question is concerned. As the father permitted payment of the aforedescribed orders that bore only the approval of his son, and tacitly, if not expressly, authorized the public display of the firm name through the above named mediums, all of which occurred after the instructions were given, we think that such instructions were abrogated or nullified and that the father cannot now be heard to deny liability for the partnership debt involved herein and which was incurred subsequent to the abrogation.

In view of our holding expressed in the preceding paragraph, it becomes unnecessary for us to consider the father's contention that the instructions given to the salesman were imputed to and binding on his employer, the plaintiff herein.

The judgment appealed from appears to be correct and it is affirmed with costs.